Francisco G. Planas, demandante y apelante, *v.* Ana Chambers, demandada y apelada.

Núm. 8358.—*Sometido:* Noviembre 13, 1941. *Resuelto:* Noviembre 18, 1941.

*Diego O. Marrero,* abogado del apelante; *Henry G. Molina,* abogado de la apelada.

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

Francisco G. Planas radicó demanda de divorcio por abandono contra su esposa Ana Chambers, alegando que él es vecino de San Juan y que "la demandada reside actualmente en la ciudad de Nueva York, Estado de Nueva York, Estados Unidos de América." La demanda fué radicada y el emplazamiento expedido el 25 de octubre de 1939. El mismo día, el márshal de la Corte de Distrito de San Juan devolvió el emplazamiento, haciendo constar en el certificado de diligenciamiento que "el presente emplazamiento no ha sido notificado a la demandada Ana Chambers, porque ésta no está actualmente residiendo en la Isla de Puerto Rico, y según la mejor información obtenida, la cual creo cierta, esta demandada se encuentra en la ciudad de Nueva York."

El mismo día 25 de octubre de 1939, el demandante solicitó y obtuvo una orden para la citación de la demandada por medio de edictos. Alegó en su moción "que le consta de propio conocimiento que la demandada no se encuentra

residiendo aquí e ignora su residencia, pero sabe que reside en Nueva York.'' Publicados los edictos, anotada la rebeldía y visto el caso, sin la comparecencia de la demandada, en 30 de enero de 1940 la corte inferior dictó sentencia a favor del demandante.

En octubre 31 de 1940 la demandada Ana Chambers radicó una moción solicitando se dejase sin efecto la sentencia dictada en su contra y se le permitiera radicar una contestación a la demanda. Alegó en su moción, que ella nunca fué emplazada; que no se le envió copia de la demanda ni del emplazamiento, a pesar de que el demandante sabía y conocía la residencia de la demandada en Nueva York para la fecha en que se tramitaba el procedimiento; que es falsa la alegación del demandante de que él ignoraba la residencia de la demandada en Nueva York, por cuanto para esa fecha el demandante enviaba regularmente todas las semanas a la demandada, por conducto de su hijo Frank Planas Chambers, quien trabajaba en San Juan, la suma de $35, de los cuales diez eran para su hija; que el fin que se propuso alcanzar el demandante al no notificar a la demandada, fué el de obtener el divorcio a espaldas de la demandada, sin que ésta tuviera oportunidad de defenderse; que es falso que la demandada no residiera con el demandante por haberse negado a vivir con él o que la demandada hubiera abandonado el hogar o se hubiera negado a regresar al mismo para convivir con su esposo; que para la fecha en que se radicó la demanda en este caso, se hallaba pendiente ante la misma corte otra acción de divorcio entre las mismas partes, y que eso no obstante el demandante ignoró la acción ya pendiente para iniciar una nueva acción por una causal de divorcio distinta; que el demandante ha actuado de mala fe, aprovechándose de la ausencia de la demandada para obtener el divorcio a sus espaldas.

En su oposición a la moción, el demandante negó todas aquellas alegaciones en las que se le imputa mala fe, y como materia nueva alegó que desde su regreso a la Isla

en marzo de 1940, la demandada solamente demostró tener interés en que el demandante se obligase por medio de un documento a pasarle una pensión durante su vida y la del demandante; que el demandante dió instrucciones a su abogado para que preparase dicho documento; que el documento fué preparado, pero la demandada nunca se presentó a firmarlo; que el demandante no volvió a saber de ella hasta que fué notificado de la moción para dejar sin efecto la sentencia; y, por último, que descansando en la sentencia de divorcio, el demandante contrajo matrimonio con Ligia Laforet Carbonell.

En noviembre 28, 1940, la corte inferior, después de oír la prueba de una y otra parte, dictó su resolución dejando sin efecto la sentencia de divorcio, por entender que la misma es nula por haber sido dictada sin que la corte hubiese adquirido jurisdicción sobre la persona de la demandada, y, además, porque las circunstancias exigen que se dé a la demandada una oportunidad de contestar la demanda, para lo cual se concedió a ésta un término de diez días.

No conforme, el demandante interpuso el presente recurso, y para sostenerlo alega que la corte inferior erró:

1º. Al resolver que en octubre 25, 1939, el demandante conocía la dirección de la demandada en New York, y que ocultó ese hecho a la corte para no tener que notificar por correo a la demandada.

2º. Al resolver que la sentencia de divorcio es nula por falta de jurisdicción sobre la demandada.

3º. Al abusar de la discreción que le concede el artículo 140 del Código de Enjuiciamiento Civil no teniendo en cuenta al dejar sin efecto la sentencia, que el demandante había contraído nuevas nupcias.

Haremos un resumen de la prueba testifical que consideramos pertinente para la decisión de la única cuestión envuelta en el presente recurso, o sea la de si la corte inferior abusó o hizo buen uso de su discreción al decretar la nulidad de la sentencia.

Declaró en primer término la demandada, y dijo:

Que vivió en Puerto Rico hasta el 27 de agosto, 1939, fecha en que se fué a Estados Unidos por encontrarse muy enferma; que mientras estuvo en Nueva York su esposo, el demandante, continuó pasándole $25 semanales, los que le enviaba por conducto de su hijo; que regresó a Puerto Rico en marzo 28, 1940; que en ese mes de marzo fué que supo por primera vez que su esposo se había casado y que fué su hija la que llevó la noticia al hospital; que en Nueva York residía con su hermana en Jackson Heights, L. I., y que su esposo conocía a su hermana y había estado en su casa muchas veces; que en ocasiones anteriores ella vivió con su tía, Mrs. Lizzie O'Brian, en 60 Brooklyn Place, Brooklyn, también conocida por su esposo; que no es cierto que durante los últimos cinco años ella se haya negado a vivir con su esposo; que ella siempre se cuidó de la casa y de los hijos; que fué él quien abandonó el hogar en septiembre 17, 1934, diciendo que no volvería más, y ella siguió en la casa con sus dos hijos; que desde esa fecha él no volvió más a la casa; que no puede decir si estaría dispuesta a vivir otra vez con su esposo, pues éste ha estado viviendo con otra mujer durante cinco años.

Francisco J. Planas, hijo del demandante, declaró: que él no ha intervenido en la controversia entre sus padres, por ser una cuestión muy delicada para él; que después que su mamá se embarcó para Nueva York, su papá le entregaba todos los viernes $35 para que se los enviase a su mamá y él se los enviaba; que su padre sabía que ella estaba en Nueva York; que el demandante estaba informado de la enfermedad de su esposa por las cartas que recibía; que en todo ese tiempo su padre no le dijo que hubiera presentado otra demanda de divorcio, y que él se enteró del divorcio por una crónica social de un periódico en la que se decía que su padre se había casado. Repreguntado por la defensa, contestó: que su padre sabía que su mamá estaba en Nueva York y sabía hasta donde vivía, "porque en repetidas oca-

siones yo le dijo que ella vivía con su hermana en Nueva York, con la hermana de mi mamá."

El artículo 140 del Código de Enjuiciamiento Civil provee, entre otras cosas, lo siguiente:

"Cuando por cualquier causa la citación en una demanda no se hubiese hecho al demandado en persona, podrá la corte, en la forma que estimare justa, permitir que dicho demandado o su representante legal, en cualquier tiempo dentro del año de pronunciado el fallo en ella, la conteste tal como se interpuso."

La corte inferior declaró como hecho probado que en la fecha en que el demandante juró que "la demandada no se encuentra residiendo aquí e ignora su residencia," dicho demandante sabía cuál era el sitio donde residía su esposa en la ciudad de Nueva York. Las declaraciones de la demandada y de su hijo, a las que la corte inferior dió entero crédito, son ampliamente suficientes para sostener las conclusiones de la corte inferior. Aceptado, pues, el hecho de que el demandante ocultó a la corte inferior el conocimiento que tenía de la dirección o residencia de su esposa en New York, con el propósito de que la orden de publicación de edictos no incluyese el requisito de notificación a la demandada por correo, la corte inferior procedió correctamente al declarar que la notificación por edictos era nula y que la corte carecía de jurisdicción para dictar la sentencia de divorcio.

El caso de *Ligare* v. *California Southern Railroad Company*, 76 Cal. 610, 18 P. 777, citado por el apelante en apoyo de su contención de que no era necesario el envío de una copia del emplazamiento por correo a la demandada, no es aplicable al caso de autos, por envolver una situación enteramente distinta a la del presente caso. En el caso citado se impugnó la suficiencia del *affidavit* que sirvió de base a la publicación de edictos, por dos motivos, (*a*) insuficiencia en cuanto a las alegaciones sobre las diligencias practicadas para encontrar al demandado dentro del estado, y (*b*) que en el affidavit no se alegaba que el sitio de residencia del demandado no era conocido por el demandante.

En cuanto al primer punto se resolvió que el affidavit era suficiente para sostener la inferencia de que se había actuado con la debida diligencia. En cuanto al segundo, se sostuvo que no era necesario que en el affidavit se hiciera constar si la residencia del demandado era o no conocida por el demandante, pues ése es un requisito que debe cumplirse solamente cuando se trate de un demandado no residente o ausente. Véanse: *Ricketson* v. *Richardson*, 26 Cal. 153, 154, y artículos 94 y 95, Código de Enjuiciamiento Civil.

En el caso de autos, encontrándose la demandada en Nueva York en la fecha en que se solicitó la publicación de edictos, era necesario que el demandante hiciese constar en su declaración si conocía o le era desconocida la residencia de la demandada. Juró el demandante falsamente que ignoraba la residencia de su esposa, y al hacerlo así vició de nulidad la orden de publicación de edictos y todo lo actuado por virtud de la misma.

Consideramos igualmente inaplicable el caso de *Day* v. *Nottingham,* 66 N. E. 998, decidido por la Corte Suprema de Indiana. Dicho caso más bien sostiene las contenciones de la parte aquí apelada y la resolución recurrida. Bastará que citemos el siguiente párrafo:

"El cuarto párrafo de la petición del apelante solicita que se deje sin efecto la sentencia en el procedimiento de divorcio por el fundamento de que la demandante en dicho procedimiento fué culpable de fraude al engañar o confundir a la corte mediante declaraciones falsas en el affidavit por ella presentado al efecto de que la residencia de su esposo le era desconocida. Aun cuando por regla general es contrario a la política de la ley intervenir con las sentencias dictadas en procedimientos de divorcio, sin embargo, todavía reconocemos la bien sentada doctrina de que un decreto o sentencia en tales casos puede, en un procedimiento directo para tal fin, ser dejado sin efecto o anulado a petición de la parte perjudicada, cuando la sentencia ha sido obtenida por fraude de la parte a cuyo favor fué dictada, o cuando dicha parte ha sido culpable de fraude o engaño al impedir que su adversario o adversaria fuera notificado de la pendencia de la acción según lo requiere la ley, o de impedir

su comparecencia en el procedimiento o en la defensa de la acción. Este derecho es concedido en algunos casos a la parte perjudicada aun cuando el demandante en el procedimiento de divorcio hubiere fallecido o hubiese contraído nuevas nupcias. Pero en tales casos la corte debe ser extremadamente cautelosa en el ejercicio de su facultad para anular la sentencia, y la solicitud de anulación debe ser hecha a tiempo, y debe presentar un caso fuerte de fraude, para justificar la intervención de la corte para dejar sin efecto la sentencia.''

En el citado caso la corte de apelación sostuvo la sentencia de la corte inferior negándose a dejar sin efecto la sentencia de divorcio, basándose en que si bien era cierto que la demandante había jurado falsamente que no conocía la residencia de su esposo, dicha declaración no afectó en manera alguna los derechos del demandado, quien durante todo el procedimiento de divorcio había sido un residente dentro del Estado de California.

Considerados detenidamente todos los hechos y circunstancias de este caso somos de opinión que la corte inferior hizo el debido uso de su discreción, concedídale por el artículo 140 del Código de Enjuiciamiento Civil, al dejar sin efecto la sentencia de divorcio.

El hecho de que el demandado haya contraído nuevas nupcias, hecho que no aparece sostenido por evidencia alguna, no es por sí solo suficiente para autorizar una revocación de la sentencia recurrida. Si la corte no adquirió jurisdicción sobre la persona de la demandada, por razón de la falsa declaración hecha por el demandante, éste no puede mediante su matrimonio conferir a la corte la jurisdicción que originalmente no tuvo.

*La resolución recurrida debe ser confirmada.*

El Juez Asociado Sr. Todd, Jr., no intervino.